(Common Pleas, Summit County, Ohio.)
Decided Dec. 30, 1897.

## THE STATE OF OHIO v. JOHN M. GARDNER.

*The act of the General Assembly of Ohio, passed April 21, 1896, (92 O. L., 263), "to promote the public health and regulate the sanitary construction of house draining and plumbing," unconstitutional.*

KOHLER, J.

This cause comes before the court on a petition in error to reverse the judgment of the mayor of the city of Akron, in a certain action pending before the mayor, wherein the plaintiff in error was defendant, and the state of Ohio was plaintiff.

For the purpose of the trial in the mayor's court, the attorneys for the parties respectively, agreed upon a statement of facts which was reduced to writing and signed by the parties. The statement is as follows:

"The defendant, John M. Gardner, is now, and has been a master plumber for two years last past; for ten years next prior thereto, was a journey-man plumber, and is now, and was, during the whole of said period, skilled and competent as such plumber; and that during the whole of the said period, to-wit, during the twelve years last past, he has worked and is now working at his said trade, that of a plumber; that on May 7, 1897, defendant was engaged in his said business of plumbing, in the city of Akron, Ohio, as an individual; that he was not a member of any firm, or co-partnership, or corporation engaged in said business; that on said last named date, defendant put in a certain sink, sewer and water connection, in a certain building in the Ayliffe Block in said city, and that at said date, the defendant had not secured the license therefor, of the Board of Health of the said city of Akron."

Upon the statement so submitted, (there being no other evidence in the case,) judgment was rendered for the state and against the defendant, and thereupon the petition in error was filed in this court A number of errors are assigned for the reversal of the judgment; in substance these are identical. namely: that the said John M. Gardner was guilty of no offense under the laws of this state.

It is claimed in behalf of the state, that the acts of the defendant below, and set forth in the agreed statement. were in violation of the Act of the General Assembly of the state of Ohio, passed April 21st, 1896, and entitled "An Act to Promote the Public Health and Regulate the Sanitary Construction of House-drainage and Plumbing."

The first and second sections of this act reads as follows:

"Sec. 1. That any person, firm, or corporation now, or that may hereafter be engaged in, or working at the business in this state, either as master or employing plumber, or as a journey-man plumber, shall first secure a license therefor, in accordance with the provisions of this act.

"Sec. 2. Any person desiring to engage in, or work at, the business of plumbing, either as master or employing plumber, or as a journey-man plumber, shall apply to the president of the Board of Health, or other officer having jurisdiction in the locality where he intends to engage in, or work at, such business, and shall, at such time and place as may be designated by the Board of Examiners, herein after provided for, to whom such application shall be referred, be examined as to his qualifications for such business. In case of a firm or corporation, the examination and licensing of any one member of such firm, or the manager of such corporation, shall satisfy the requirements of this act.

The third section of the act relates to the appointment of the Board of Examiners, qualifications - and terms of the members; in brief. the Board shall consist of five members; three members shall be practical plumbers, two of whom shall be master plumbers, and one shall be a journey-man plumber, the president of the board of health, and the inspector of buildings shall be members ex officio of the board.

The fourth section relates to the organization of the board, and also the examination of applicants, as to their practical knowledge of plumbing, and also fixes the fee for the license of a master plumber at five dollars, and for a journey-man plumber at one dollar.

The fifth section relates to the appointment and qualifications of an inspector of plumbing.

The sixth section relates to the rules to be established for the construction, alteration and inspection of plumbing and sewerage.

The seventh section provides, that any person violating any provision of the act, shall be guilty of a misdemeanor, and shall be subject to a fine not exceeding fifty dollars, and not less than five dollars for each and every violation thereof.

By section 10, the act is to take effect from and after its passage.

It is worthy of note, that the three plumbers constituting a majority of the board, are eligible as such without any examination whatever, or wholly without regard to the length of time that they have worked at the business of plumbing; so that practical experience, knowledge and training, so far as the majority of this board are concerned, are not taken into account. Any practical

plumber and any master plumber, is made competent to serve as a member of the board of examiners. And as to the scope and extent of the examination of plumbers, this board has an entirely arbitrary discretion as to what qualifications it will exact on the part of the applicant. It may make, an examination which none but an expert in sanitary knowledge could pass, or it may make the examination entirely perfunctory.

The plaintiff in error, contends that the above act is in violation of his constitutional rights, under the fourteenth amendment of the constitution of the United States, and the constitution of this state, both of which declare that no person shall be deprived of life, liberty, or property, without due process of law. The constitutionality of the act is thus directly brought in question, and this is purely a legal question to be determined by a consideration of the constitution on the one hand, and the terms, effect and operation of the statute on the other.

The rule on this subject is, that where a doubt exists as to the constitutionality of an act, it is to be resolved in favor of the law; but a statute is the expressed will of the legislature, while the constitution is the expressed will of the people; the latter is paramount, and when the question of constitutionality of legislative action is raised in such a manner as to become necessary to the determination of a pending cause, the court must decide it.

The plaintiff in error contends that this statute is invalid, for the reason first, that it arbitrarily and unjustly interferes with personal liberty and private property without due process of law.

Second, that it deprives plaintiff in error of the equal protection and benefit of the law.

Third, by discriminatng against the individual, and in favor of firms and corporations.

Fourth, by discriminating in favor of those plumbers who may be members of the board of examiners.

The right of every person in this country to follow any legitimate business or occupation he may see fit, is a privilege open alike to every one, and cannot be disputed; his own labor, and the right to use it as a means of a livelihood, is a right as fully protected by law, as any other personal and private right.

"Liberty, in its broad sense as understood in this country, means the right not only of freedom from absolute servitude, imprisonment or restraint, but the right to use his faculties in a lawful way, to live and work where he will, to earn his livelihood in a lawful calling, and to pursue a lawful trade and avocation; all laws, therefore, which impair and trammel these rights which limit one in his choice of trade or profession, or restraint, or his otherwise lawful movements, are infringements upon his fundamental rights of liberty which are under constitutional protection."

In re Application of Jacob's, 98 N. Y. R., 106.

In this case, the plaintiff in error is a practical plumber of ten years' experience; his skill as a workman is not questioned, nor has his work been found fault with by the Board of Health in this city. Doing such work as he could find to do for such persons as were willing to employ him, he was not a master plumber, or employing plumber; he was doing his own work, and on his own account; neither does it appear that any one who has employed him, has complained of his work. His alleged offense consists in the fact that he did not comply with the second section of the act referred to, by not submitting to an examination and procuring a license from the board of examiners.

In behalf of the state the claim is made, that the legislation in question, and the regulations thereby imposed on the business of plumbing, (its purpose being to promote the public health, and regulate the sanitary construction of house drainage), is within the police power, inherent in every sovereignty, and that it is warranted as a health measure.

We have upon our statute books, many laws imposing limitations and restraint upon certain callings and occupations, such for example, as the law regulating the practice of medicine, dentistry, pharmacy, and vetinarians. Such laws, reasonable and proper in their nature, are upheld by the courts as a proper exercise of the police por er. This paramount right of the state to impose reasonable restraint and regulation in regard to such pursuits of life as affect the public health and welfare, rest upon the well recognized maxim, salus populi est suprema lex. But the difficulty arising in any case is, to determine what is, and what is not, within the police power?

The limit of the power has not been, and cannot be accurately defined, but the power, however broad and extensive, is not above the constitution. As to the common and ordinary occupations of life, little or no legislation may be necessary; but if the occupation or calling be of such a character as to require a special course of study or training, or experience to qualify one to pursue such occupation or calling with safety to the public interests, no one questions the power of the General Assembly to impose such restraints and regulations as it may deem proper, for the protection of the public from evil resulting from incompetency and ignorance.

It has, however, been held in many cases, that under the mere guise of

police regulation, private rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final or conducive; if it passes an act ostensibly for the public health, and thereby destroys, or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act and see whether it relates to, and is convenient to the public health or not.

If the pursuit of plumbing as a mechanical occupation is within the police power, subject to state supervision and statutory regulation, the question at once occurs, where is the power and regulation to stop? There may be, and probably are numerous other trades and occupations, perhaps not so extensvie as plumbing, but which, nevertheless effect to some extent, the public health and welfare. This precise question was very fully discussed by the Court of Appeals of N. Y., in the case of the Application of Jacob's, 98 N. Y. R., 106.

The defendant in that case, was arrested under a law of New York, entitled an act to improve the public health by prohibiting the manufacture of cigars and preparation of tobacco in tenement houses, in certain cases. It was sought to uphold that act on the ground that it was clearly within the police power of the state, but the Court of Appeals, after a very full discussion, held the act unconstitutional. The learned Justice, in summing up, used the following language: "Such legislation may invade one class of rights to-day and another to-morrow, and if it can be sanctioned under the constitution, while far removed in time we will not be far away in practical statesmanship from those ages when govermental prefects supervise the building of houses, the raising of cattle, the sowing of seed and the reaping of grain, and governmental ordinances regulating the movement of labor of artisans, the rate of wages, the price of food, and diet and clothing of the people, and a large range of other affairs long since in a civilized land regarded as outside of governmental functions. Such governmental interference disturbs the normal adjustment of the social fabric, and usually deranges the delicate and complicated machinery of industry, and creates a score of ills while attempting the removal of one."

Again, in the case of the People against Warden of the City Prison, decided by the New York Court of Appeals, in 1895, the constitutionality of the plumbing act was brought into question, and the extent of the police power was there fully considered. The General Assembly of that state, in 1882, passed an act creating a board for the examination of plumbers, and forbidding any person to exercise the trade or calling of master plumber, without passing an examination before the board. 144 N. Y. R., 529. Four of the judges of that court, held this act regulating the business of plumbing in the state of New York to be within the constitution, and three judges, including Judge Peckman, now Associate Justice of the Supreme Court of the United States, held the act a violation of the constitution, in that it detracts from the liberty of the citizen acting as a tradesman, in his efforts to support himself and family, by the honest practice of a useful trade. In his able dissenting opinion, Justice Peckman takes strong grounds against parental or class legislation of that kind; his claim being, that the plumbing business is not a learned profession, but a mechanical trade; that the plumber does not generally hold himself out as an expert in the science of sanitation, nor is any such knowledge expected of him.

The majority of the court, however, held the law constitutional, and this makes it necessary, perhaps, to contrast the act of the legislature in New York, upon which that decision is founded, with the act in question here, and there is a very marked difference between the two. The New York statute does not operate to prevent the individual plumber from following the trade of a plumber. It merely requires those who propose to do business as master plumber, to submit to an examination as to their general competency. Under the New York law, every person may follow the trade of plumber if he chooses; the restriction is only upon their employing men to work for them in their business, unless they hold a certificate of competency, based on experience and qualification.

In Ohio the law is, that the individual plumber or journey-man plumber must pay the license fee and obtain a certificate, while the master plumber, or employing plumber, practically goes free, or what is substantially the same where a firm of several partners are doing business, or where it is a corporation, if one partner of the firm, or the manager of the corporation obtains the necessary certificate, it is sufficient and satisfies the law, so that the firm and corporation can then go on and do its work by means of plumbers or employes who are not licensed, or even by the employing of apprentices.

There is another very marked distinction under the New York statute; the board of examiners consists of five members, three of whom must be practical plumbers of at least ten years' experience, while under the Ohio act, the board consists of five members, three of whom must be practical plumbers, while there are no requirements whatever, as to their experience or knowledge, yet, this board is to pass upon the qualifications of all others.

Now, in regard to this New York act, the learned Justice who gave the decision of the majority of the court, in speaking of the act as a whole, says, "it seems to me, that the constitutionality of this act is to be tested by its effect upon the citizens' rights to pursue a lawful employment; if it imposes an arbitrarily restriction, and if it has no reference to the welfare and health of the people, it must be condemned. I am not unwilling to concede that the act skirts pretty closely the border line beyond which legislation ceases to be within the powers conferred by the people of the state through the constitution upon its legislative body," and he says further, "the court should never hesitate to interpose the barrier of its judgment against the operation of laws which distinctly contravene constitutional rights."

Now, if in the opinion of the learned Chief Justice, the act of New York comes very close to the line of unlawful exercise of power, what must be said of the Ohio statute now under consideration? What therefore, then, is the effect and operation of the act in question? It results in this:

A man may be a practical plumber, he may have many years of experience, he may be expert in hygiene sanitation and drainage, he is at once required to apply for a certificate, submit to an examination, pay a license fee before he can work at his trade. But in the case of a firm partnership composed of one, two, three or more members, all that is necessary, is that one member shall obtain the certificate, and then all the other partners can work at the business, whether they are qualified or not, and they may employ, in addition, as many workmen as they please, whether the workmen are qualified by experience or not. A man may be a good, practical workman as a plumber, and may possess little scientific knowledge upon the subject of sanitation, sewer gas ventilation, etc., but he may for all that, be a very good workman, fully competent to perform the work that plumbers ordinarily perform, and his work may be entirely satisfactory to those who wish to employ him; he may have satisfactory reasons for not becoming a member of a firm or partnership, he may be unwilling to become a member or stock-holder in a corporation, and in that case he cannot work at his trade or earn a living without submitting to the requirements of the law. On the other hand, if he is willing to work for a firm or corporation, where one partner, or the manager, has taken out the necessary certificate, he can work at his trade under the license issued to such employers.

Now, to my mind, this is a most unjust and unfair discrimination in favor of firms and corporations; when we consider that a large proportion of the plumbing business necessarily passes into the hands of co-partnerships or corporations engaged in the plumbing business, and that the employes of such firms or corporations, may lack in experience, or at least are not licensed, then it must be apparent that the act fails entirely as a health measure, and that it does not accomplish what it purports to accomplish.

The second section of the act is somewhat ambiguous. The provision, as I have stated, exempts firms and corporations from its application, in so far that one member of a firm, and the manager of a corporation, obtaining a certificate shall satisfy the provisions as to qualifications, etc. Now, whether a firm or corporation, by virtue of this proviso, can employ workmen or journey-men plumbers who have not obtained a license or certificate, may be questioned. In the argument of the case, counsel for the petition in error and for the defendant, agreed (as I understood them), that a firm or corporation having qualifications in the manner provided, could employ any plumber, journey-man or workman to do its work, whether he was licensed or not. There is no doubt however of this, that a co-partnership or firm, composed of three or more members, can obtain the certificate for one member, and under that, each and all the other members can engage in plumbing work, whether qualified by experience or not, and in the case of a corporation composed, we will say, of ten stockholders, if the manager obtains a certificate, any stock-holder, or indeed, all the stockholders, may engage in plumbing work under a corporation license without examination or a license, and in fact, without regard to whether they are qualified or not.

In order to be within the constitution, police regulations must not be unreasonable, nor must they make unjust discrimination against individuals or classes. Black's Constitutional Law, p. 37.

The Supreme Court of the state of Maryland, held, that an act of the legislature of that state relating to the business of plumbing, was within the police power of regulation, and therefore, not in violation of the constitution of that state, and it is not necessary that I should question it, and I do not question it here. The business of plumbing is an important one, while not in any sense a learned profession. As the business is ordinarily carried on, it does require training and skill to the end, that the drainage and sewerage of public works and private tenements shall be as skillfully planned and carried out as the modern standard of science admits, but this might all be very effectually accomplished by a general law providing for sanitary inspection of plumbing.

My conclusion upon the whole matter is, that the proviso in the second section, whereby a firm or corporation may carry on a very extensive business of plumbing by means of a certificate given to one member of a firm, or to a manager of a corporation, is such an unjust and unequal discrimination in favor of such firms and corporations, and against other mechanics desiring to pursue the same business for a livelihood, that I hold this act to be unconstitutional, for the reasons above stated, and in doing this, I am not unmindful that the power which courts possess to condemn legislative acts which are in conflict with the supreme law, should be exercised with great caution and reluctance, and especially should inferior courts exercise such care and caution; but my doubt as to the constitutionality of this act is such that I do not feel warranted in permitting the fine and penalty assessed against the plaintiff in error in this case to stand upon the case presented, and the judgment of the court below is therefore reversed.